**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VIRTUAL CREATIVE ARTISTS, LLC, | |
| *Plaintiff*, | C.A. No. 1:24-CV-5346 |
| v. | JURY TRIAL DEMANDED |
| BUZZFEED, INC., | PATENT CASE |
| *Defendant*. | |

**DEFENDANT BUZZFEED'S MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>**

# TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................................. 1

II.    NATURE AND STATE OF THE PROCEEDINGS ........................................... 1

III.   STATEMENT OF THE ISSUE .......................................................................... 2

IV.   STATEMENT OF THE FACTS ........................................................................ 2

V.    LEGAL STANDARD .......................................................................................... 5

      A.    Legal Standard for Dismissal Pursuant to Rule 12(b)(6) ........................ 5

      B.    The Law of 35 U.S.C. § 101 ................................................................... 6

VI.   ARGUMENT ....................................................................................................... 7

      A.    The Asserted Patents Are Invalid Under § 101 ..................................... 7

            1.    Claim 1 of the '665 Patent is representative ................................ 7

            2.    *Alice* Step 1: Claim 1 of the '665 Patent is directed to the abstract idea of crowdsourcing content ............................................................. 11

            3.    *Alice* Step 2: Claim 1 does not contain an inventive concept sufficient to confer patent eligibility ............................................................. 18

      B.    There Are No Claim Construction or Factual Disputes Preventing the Court from Ruling at the Rule 12 Stage ............................................................. 20

VII.  CONCLUSION .................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Texas, LLC v. DIRECTV, LLC,*
  838 F.3d 1253 (Fed. Cir. 2016)..................................................................................19

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
  134 S. Ct. 2347 (2014) ...................................................................................... *passim*

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC,*
  966 F.3d 1347 (Fed. Cir. 2020) (Chen, J., concurring)............................................16

*Ancora Technologies, Inc. v. HTC America, Inc.,*
  908 F.3d 1343 (Fed. Cir. 2018)..................................................................................17

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009).....................................................................................................5

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
  493 F.3d 87 (2d Cir. 2007)...........................................................................................5

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.,*
  687 F.3d 1266 (Fed. Cir. 2012)....................................................................................6

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 .................................................................................................................5

*Berkheimer v. HP Inc.,*
  881 F.3d 1360 (Fed. Cir. 2018)..................................................................................20

*Bilski v. Kappos,*
  561 U.S. 593 (2010)............................................................................................5, 6, 7

*BSG Tech LLC v. Buyseasons, Inc.,*
  899 F.3d 1281 (Fed Cir. 2018)............................................................................18, 20

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
  776 F.3d 1343 (Fed. Cir. 2014)........................................................................7, 10, 11

*Credit Acceptance Corp. v. Westlake Servs.,*
  859 F.3d 1044 (Fed. Cir. 2017)..................................................................................12

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.,*
  558 F. App'x 988 (Fed. Cir. 2014) .............................................................................15

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014)...................................................................................17

*Diamond v. Chakrabarty*,
    447 U.S. 303 (1980).......................................................................................................6

*Diamond v. Diehr*,
    450 U.S. 175 (1981).......................................................................................................7

*EasyWeb Innovations, LLC v. Twitter, Inc.*,
    689 F. App'x 969 (Fed. Cir. 2017) ...............................................................................20

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016)...............................................................................17, 18

*Ficep Corp. v. Peddinghaus Corp.*,
    No. 2022-1590, 2023 WL 5346043 (Fed. Cir. Aug. 21, 2023) (cert. denied) ...........7

*In re Jobin*,
    811 F. App'x 633 (Fed. Cir. 2020) .................................................................12, 13, 19

*In re Jobin*,
    811 Fed. Appx.........................................................................................................13, 15

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012)...................................................................................................7

*In re McDonald*,
    Case No. 24-2015 (Fed. Cir., Sept. 10, 2024) (per curiam)........................................13

*Mobile Acuity Ltd. v. Blippar Ltd.*,
    No. 2022-2216 (Fed. Cir. Aug. 6, 2024).....................................................................11

*Parker v. Flook*,
    437 U.S. 584 (1978).......................................................................................................7

*Riggs Tech. Holdings, LLC v. Cengage Learning, Inc.*,
    No. 2022-1468, 2023 WL 193162 (Fed. Cir. Jan. 17, 2023) .......................................6

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018)...................................................................................11

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016)...................................................................................16

*In re TLI Communications LLC Patent Litigation*,
    823 F.3d 607 (Fed. Cir. 2016).........................................................................10, 16, 19

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)...........................................5, 12, 15, 18

**Statutes**

35 U.S.C. § 101 ........................................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)..........................................................................................1, 2, 5

## I.    INTRODUCTION

This case should be dismissed because the claims of U.S. Patent Nos. 9,477,665 (the "'665 Patent") and 9,501,480 (the "'480 Patent") (collectively, the "Asserted Patents") fail to claim patent-eligible subject matter under 35 U.S.C. § 101.  The claims are directed to the abstract idea of crowdsourcing online content. Crowdsourcing content is the well-known practice of allowing users to share and rank online content. But claims that do nothing more than recite an abstract idea are ineligible for patent protection. Such is the case here. The claims of the Asserted Patents provide no improvement in the computer technology underlying the inherently human activity of crowdsourcing content. They introduce no novel hardware or software. They disclose no new algorithms or techniques. Rather, they rely on existing techniques and generic computer tools to implement the abstract idea of crowdsourcing content, effectively withdrawing it from the public domain. Because they offer nothing beyond the abstract idea of crowdsourcing content, they are invalid pursuant to 35 U.S.C. § 101.

Resolving this issue does not require discovery or claim construction. Amending the Complaint is also futile as no additional pleading can change the abstract nature of the claims. To avoid waste of judicial and party resources litigating invalid patents, BuzzFeed therefore respectfully requests that the Court dismiss the Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.    NATURE AND STATE OF THE PROCEEDINGS

On July 16, 2024, Plaintiff Virtual Creative Artists, LLC ("VCA") filed this lawsuit accusing Defendant BuzzFeed, Inc.'s ("BuzzFeed") website of infringing the Asserted Patents. BuzzFeed's website allows users to create profiles, submit online content such as articles, and then "invit[es] participation and comment from other active users" on the submitted content. (*See, e.g.*, Dkt. 1 ¶¶ 22–29, 44–51.)

Because the Asserted Patents are invalid under 35 U.S.C. § 101 for failure to claim patent-eligible subject matter, BuzzFeed requested that the Court dismiss the Complaint pursuant to Rule 12(b)(6) in its pre-motion letter. Dkt. 14. VCA opposed. Dkt. 15. The Court ordered BuzzFeed to file the current Motion to Dismiss by September 16, 2024. Dkt. 16.

## III.    STATEMENT OF THE ISSUE

Abstract ideas are ineligible for patentability under 35 U.S.C. § 101 absent an inventive concept that amounts to "significantly more" than the abstract idea. The claims of the Asserted Patents are directed to the abstract idea of crowdsourcing content, but recite no inventive concept. Buzzfeed respectfully submits that the Court should dismiss VCA's claims pursuant to Rule 12(b)(6).

## IV.    STATEMENT OF THE FACTS

The Asserted Patents are members of the same patent family, and the '480 Patent is a continuation of the '665 Patent. Because of this lineage, the Asserted Patents share the same priority dates, inventors, figures, titles, and specifications.[1] Only the claim language differs.

The basic "problem" the Asserted Patents purport to solve is the public's never-ending need for new entertainment content. They explain that "[t]he television industry finds itself having to grapple with its ability to attract viewers" because "[c]reating fresh ideas for weekly episodes is and has always been the writing team's biggest challenge." '665 Patent at 2:13–14, 31–32. This problem is not limited to television, however. "Other media such as the movie, magazine, newspaper, and music industries all face similar challenges." *Id*. at 2:39–40.

The Asserted Patents' solution to this ubiquitous problem is an "open exchange[]" for multimedia content. *Id*. at 2:56, *see also id*. at 1:23-25 ("[T]he present invention relates to a process

---

[1] Because the specifications are the same, all citations are made with reference to the '665 Patent.

for creating media content based upon submissions received on an electronic multimedia exchange.").[2] According to the Asserted Patents, while "[t]here currently exist open exchanges for many items such as futures, stocks and bonds… there does not exist a means of bringing artistic media works together in an open exchange format for searching, viewing and/or purchase in one convenient location." The claimed solution consists of two fundamental steps. First, users submit content. *Id.* at 4:1–3 ("The process of the invention generally comprises the steps of first requesting media submissions for inclusion in the media content"). Second, users rank the submitted content, generally by voting or rating. *Id.* at 4:46–47 ("Preferably, end users of the audience rate the released content."). The Asserted Patents provide examples of the claimed solution in practice:

> "A creator wants to develop a game show where information is gathered about the public's perception on various issues . . . [C]reative content developed by the show's producers is then posed to the public. By simply answering polls, surveys, and other entertaining questions, the producers will be able to gather specific content material targeted to the shows format." *Id.* at 36:52–58.

> "A television network, acting as a third party end user, is looking for some new humorous material it could adapt into one of its weekly sitcoms, which has recently plummeted in the ratings. Executives at the network plan to both openly search the content databases for applicable material as well as submit a request through the network. . . [T]he public can vote and/or rate their favorite episodes[.]" *Id.* at 38:56–5.

> "A creator wants to put together a country western CD of 10 songs from an assortment of talented but relatively unknown artists. . . Submitters record their music and transfer the audio files over the Internet to the exchange." *Id.* at 37:19–27.

The "system architecture" of the claimed solution is disclosed in Figure 2, reproduced below.

---

[2] This is consistent with the Asserted Patents' shared title: "Revenue-Generating Electronic Multi-Media Exchange and Process of Operating Same."



FIG. 2

The Asserted Patents acknowledge that every aspect of the purported invention can be performed by generic hardware and software. For example:

- **The Central Controller**: The central controller is simply conventional computer with CPU, RAM, ROM. "A Pentium microprocessor, commonly manufactured by Intel Inc., may be used for CPU." '665 Patent at 7:3–5.

- **The Billing and Payment Processors**: The Billing and Payment processers "comprise conventional microprocessors (such as the Intel Pentium), supporting the transfer and exchange of payments, charges, or debits, attendant to the method of the apparatus . . . supported with commercially available software, such as the Secure Web server manufactured by Open Market, Inc." *Id*. at 7:16–24.

- **The Cryptographic Processor**: "A microcontroller, commonly manufactured by Motorola Inc., may be used for cryptographic processor 210. Equivalent processors may also be used." *Id*. at 7:6–8.

4

- **The Databases**: No specialized databases or database structures are needed. The databases are managed by readily available, generic software, such as "Oracle 7, manufactured by Oracle Corporation." *Id.* at 7:53–56.

- **The Networking Components**: No specialized networking components or communication protocols are required. The Asserted Patents explain that connectivity can be provided by any conventional means such as "via an Internet connection, such as a modem 110, using a public switched phone network 120, such as those provided by a local or regional telephone operating company" or by "dedicated data lines, cellular, personal communication systems ("PCS"), microwave, or satellite networks." *Id.* at 6:35–41.

- **The Software**: The claim system relies entirely on "commercially available software [for processing of credit card transactions], such as the Secure Webserver manufactured by Open Market, Inc." (*Id.* at 7:22–24), "database software such as Oracle7" (7:53–56), "commercial e-mail servers" (9:45–54); "many commercial software applications that can enable the communications required by interface" (10:45–54); "conventional speaker identification software" (33:20–27), or "conventional credit card electronic charges, checks, Electronic Funds Transfer ('EFT'), or digital cash." (33:40–43).

## V.    LEGAL STANDARD

### A.    Legal Standard for Dismissal Pursuant to Rule 12(b)(6)

A party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. Pro. 12(b)(6). To survive a Rule 12(b)(6) motion, "the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555). Although factual allegations are taken as true, legal conclusions are given no deference. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"); *Twombly*, 550 U.S. at 558 (same).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J.,

concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

    **B.**    **The Law of 35 U.S.C. § 101**

Section 101 of the Patent Act recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611–12.

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted). However, transformation into a patent-eligible subject matter requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Alice*, 134 S. Ct. at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). "Where the focus of the claimed advance over the prior art shows that the claim's character as a whole is directed to steps that can be performed in the human mind, or by a human using a pen and paper[,] the claim is for a patent-ineligible abstract idea." *Riggs Tech. Holdings, LLC v. Cengage Learning, Inc.*, No. 2022-1468, 2023 WL 193162, at *2 (Fed. Cir. Jan. 17, 2023) (internal citations omitted).

## VI.    ARGUMENT

VCA's Complaint should be dismissed. The claims of the Asserted Patents are invalid under 35 U.S.C. § 101 because they fail both steps of the *Alice* test. All claims are directed to the abstract idea of crowdsourcing content and no claims contains an "inventive concept . . . sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *See Alice*, 134. S. Ct. at 2355 (internal citations omitted).

### A.    The Asserted Patents Are Invalid Under § 101

#### 1.    Claim 1 of the '665 Patent is representative

The legal standard for claim representativeness is whether the claims are "substantially similar and linked to the same abstract idea." *See Content Extraction*, 776 F.3d at 1349 (Fed. Cir. 2014). A claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *See Ficep Corp. v. Peddinghaus Corp.*, No. 2022-1590, 2023 WL 5346043, at *6 (Fed. Cir. Aug. 21, 2023) (cert. denied); *Mayo*, 132 S. Ct. at 1297–98, 1300–01; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191–92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). As detailed below, all claims of both Asserted Patents are directed to the abstract idea of crowdsourcing content and no claim adds anything beyond token activity to that idea.

##### (a)    The independent claims

The Asserted Patents each contain only one independent claim: claim 1 of the '665 Patent and claim 1 of the '480 Patent. VCA's Opposition Letter argues at length that the independent claims "use substantially different technology for their solutions" because they "require different numbers of processing apparatuses, numbers of databases, numbers of subsystems, distribution of software, operable connections between hardware, and interfaces." (Dkt. 15 at 1.)  But that is

plainly inaccurate. As illustrated in the chart below, both independent claims are substantially similar and directed to the same abstract idea of crowdsourcing content in five basic steps: (1) store submitted content in a database; (2) store user attributes in a database; (3) stored the formatted content; (4) release the content; and (5) enable content voting. Indeed, as shown in yellow highlights, the only difference appears to be which of the generic databases contains the generic content filter:

| Concept | '665 Patent | '480 Patent |
|---|---|---|
| **Preamble** | 1. A computer system comprising one or more data processing apparatus, and a computer-readable medium coupled to the one or more data processing apparatus having instructions stored thereon which, when executed by the one or more data processing apparatus, cause the one or more data processing apparatus to perform an electronic method comprising: | 1. A computer-based system comprising: |
| **Store electronic media submissions** (*i.e.*, **"content") in a database**<br><br>(and filter content by user attribute in the '665 Patent) | electronically retrieving a plurality of **electronic media submissions** from an **electronic media submissions database** using an electronic content filter located on the one or more data processing apparatus, said filter being based at least in part on at least one of the one or more user attributes, the electronic media submissions stored in an electronic media submissions database on a non-transitory medium, the plurality of electronic media submissions transferred to the electronic media submissions database over a public network, | an **electronic media submissions** server subsystem having one or more data processing apparatus and an **electronic media submissions database** stored on a non-transitory medium and a submissions electronic interface configured to receive electronic media submissions from a plurality of submitters over a public network and store said electronic media submissions in said electronic media submissions database, wherein the electronic media submissions database further stores data identifying the submitter and data indicating content for each electronic media submission; |
| **Store user attributes in a database** | the electronic media submissions database further stores data identifying the submitter and data indicating content for each electronic media submission, the | a **user database** comprising one or more **user attributes** stored therein; |

| Concept | '665 Patent | '480 Patent |
|---|---|---|
| | one or more **user attributes** stored in a **user database**; | |
| **Store formatted content**<br><br>(and filter content by user attribute in the '480 Patent) | electronically **generating a multimedia file from the retrieved electronic media submissions** in accordance with a selected digital format, **wherein the identification of the submitter is maintained** with each retrieved submission within the multimedia file; | an electronic multimedia creator server subsystem operatively coupled to the electronic media submissions server subsystem, having one or more data processing apparatus and an electronic creator multimedia database stored on a non-transitory medium, configured to select and **retrieve a plurality of electronic media submissions** from the electronic media submissions database using an electronic content filter located on the electronic multimedia creator server, said filter being based at least in part on at least one of the one or more user attributes to **develop multimedia content to be electronically available for viewing on user devices, wherein the identification of the submitter is maintained** with each selected and retrieved submission within the multimedia content; |
| **Release content** | electronically transmitting the multimedia file to a plurality of publicly accessible webservers to be **electronically available for viewing on one or more user devices** over a public network via a web-browser; and | an electronic release subsystem operatively coupled to the electronic multimedia creator server subsystem, having one or more data processing apparatus and configured to make the multimedia content **electronically available for viewing on one or more user devices**; and |
| **Enable content voting** | providing a web-based graphical user interface that **enables a user to electronically transmit data indicating a vote or rating** for an electronically available multi-media content or an electronic media submission within a respective electronically available multimedia content. | an electronic voting subsystem having one or more data processing apparatus and **configured to enable a user to electronic vote for or electronically rate** an electronically available multimedia content or an electronic media submission within a respective electronically available multimedia content. |

When claims are "substantially similar and linked to the same abstract idea," a representative claim can be used by the Court to focus its § 101 analysis. *See Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014). As illustrated above, the claims are directed to the same abstract idea of crowdsourcing content.

The additional content filtering step does not change the nature of the abstract idea, either. Here, the claims merely identify pre-existing conventional methods of filtering content, such as "filter being based . . . on user attributes," and used it for its intended purpose, i.e. filtering and organizing the solicited content. The filtering step here has no bearing on the abstract idea on its core. In addition, filtering content by itself is also an abstract idea. *See In re TLI Communications LLC Patent Litigation,* 823 F.3d 607, 611 (Fed. Cir. 2016) (holding that " the concept of classifying data (an image) and storing it based on its classification is abstract under step one").

### (b)    The dependent claims

Claim 1 of the '665 Patent is also representative of the dependent claims of the Asserted Patents. As shown below, all dependent claims merely recite insignificant pre- or -post solution activity to the abstract idea of crowdsourcing content.

| Pre- or Post-Solution Activity of Dependent Claims | '665 Patent Claims | '480 Patent Claims |
|---|---|---|
| The system allows a plurality of users to submit content | 2 | |
| Content submissions can take various forms (*e.g.*, as images or text, solicited or unsolicited, etc.) | 3–5 | 2–4 |
| Content submissions can be formatted in various ways (*e.g.*, as video, to permit editing, etc.) | 6–7 | 5–6 |
| Content submissions can be filtered in various ways (*e.g.*, by subject matter, topic, title, user rating, etc.) | 8–16 | 7–16 |
| Content submissions can be valued in various ways (*e.g.*, by voting, ranking, etc.) | 17–20 | 17–20 |
| User attributes can include various characteristics (*e.g.*, user preferences, memberships, subjects, categories, etc.) | 21 | 21 |
| The date and time of the content submission is stored | 22 | 22 |

None of these limitations alter the § 101 analysis. No dependent claim requires specialized components or recites an inventive concept. Rather, they rely on generic components for their conventional purpose to achieve a functional end (*e.g.*, use a generic filter to filter content in generic ways). Claim 1 of the '665 Patent is thus representative of all claims and the burden shifts to the VCA to "to present non-frivolous arguments as to why the eligibility of the identified representative claim cannot fairly be treated as decisive of the eligibility of all claims in the group." *Mobile Acuity Ltd. v. Blippar Ltd.*, No. 2022-2216, at *15–16 (Fed. Cir. Aug. 6, 2024); *see also Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

### 2. *Alice* Step 1: Claim 1 of the '665 Patent is directed to the abstract idea of crowdsourcing content

#### (a) Claim 1 is fundamentally abstract

In assessing whether a claim is directed to an abstract idea, Courts start by analyzing the "focus" of the claim, *i.e.*, its "character as a whole." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). Here, the focus of claim 1 of the '665 Patent is plainly on the idea of crowdsourcing content, not on particular means or technology for doing so.

To begin, every step of the process is achieved with generic computing components such as off-the-shelf databases, web-browsers, networks, and content filters. *See* § IV, *supra.* No new or specialize equipment or algorithms are needed to carry out the abstract idea of crowdsourcing content. *Id.* The Asserted Patents are simply agnostic to the technological means through which the claimed idea is realized. Indeed, that the alleged invention can be accomplished using existing "conventional" and "commercial" components is a core feature.[3] Claim 1 is thus "an idea, having

---

[3] All recited hardware is generic, such as "conventional personal computer," "conventional microprocessors," "[c]onventional internal or external modems," "conventional magnetic based

no particular concrete or tangible form." *Ultramercial*, 772 F.3d at 715. In the context of step 1 of the *Alice* inquiry, claim 1 merely states the "abstract idea [crowdsourcing content] while adding the words 'apply it with a computer.'" *See Alice*, 573 U.S. at 223.

The focus of claim 1 is using those generic computer tools and techniques to improve the efficiency of the inherently human activity of crowdsourcing content. The process recited in claim 1 is no different from, for example, how the TV show America's Funniest Home Videos works. In the case of American's Funniest Home Videos, users submit humorous videos for consideration. Basic details about user's identity and the circumstances of the video are revealed "stored" and revealed by the host in the process of viewing the clips. The videos are "formatted" for mass consumption. And the show provides a means for allowing viewers to vote on the funniest videos. Claim 1 merely recites a means for executing this well-known organized human activity with generic computer technology. As the Federal Circuit held, "mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology." *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017).

It is for these reasons that the Federal Circuit has routinely found similar patents to be ineligible for patentability. For example, the patent claims in *In re Jobin* were directed the computerized "methods and systems for developing 'products, advertisements, games, and other creative realizations,' through reliance on participants who, by contributing, obtain stakes in the developed products." *In re Jobin*, 811 F. App'x 633, 634 (Fed. Cir. 2020) (quoting to the patent

---

hard disk storage unit," and any "conventionally known variations and modification to the system components." (*Id.* at 6:61–62, 7:17–18, 9:34–35, 10:39–40, 39:12–13). The software is also generic, such as "commercially available software [for processing of credit card transactions]," "database software such as Oracle7," "commercial e-mail servers," "many commercial software applications that can enable the communications required by interface," "conventional speaker identification software," "conventional credit card electronic charges, checks, Electronic Funds Transfer ('EFT'), or digital cash." (*Id.* at 7:21–34, 7:53–56, 9:45–54, 10:45–52, 33:20–27, 33:40–43.)

application in dispute). The Federal Circuit affirmed that claims "directed to the collection, organization, grouping, and storage of data using techniques such as conducting a survey or crowdsourcing" were ineligible because they were "directed to a method of organizing human activity—a hallmark of claims directed to abstract ideas." *Id.*, 811 Fed. Appx. at 637. It further held that using generic computer components such as a "server and database" were "merely tools used for organizing human activity, not an improvement to computer technology." *Id.* Consequently, "the claim does not present any specific asserted improvement in computer capabilities" and held that it is directed to an abstract idea ineligible for patent protection. *Id.*

As another example, in *In re McDonald*, the Federal Circuit held that patent claims "directed to the managing of a process for making commercial tipping payments […] for customer-approved media" ineligible for patent protection. *In re McDonald*, Case No. 24-2015, at *6 (Fed. Cir., Sept. 10, 2024) (per curiam). The court determined that the *In re McDonald* claim "constitutes a method of organizing a fundamental economic human activity," and "the focus of the claim is clearly on that activity, using 'generic computer implementations' (including networks) as a tool, rather than any improvement in computer capabilities, *e.g.* for receiving, storing, retrieving, analyzing, generating, transmitting, or presenting information." *Id.* at *7.  It further reasoned that "nothing in the claim, considered alone or in light of the specification, goes beyond performing a method of organizing human economic activity with the aid of a conventional computer," which is "not enough for eligibility." *Id.* at *7.

The same analysis applies here. The focus of claim 1 is on the idea of crowdsourcing multimedia content—*i.e.*, receiving, storing, generating, transmitting and presenting information—using generic computer components in the conventional manner. Indeed, claim 1 explicitly recites the steps of "<u>retrieving</u> . . . media submissions," "<u>generating</u> a multimedia file,"

"<u>transmitting</u> the multimedia file," and "<u>providing</u> a web-based graphical user interface." '665 Patent at claim 1 (emphasis added). Yet claim 1 confers no improvement in computer capabilities. Therefore, claim 1 of the '665 Patent is directed to an abstract idea.

**(b)    Claim 1 contains no meaningful limitations**

Claim 1 also contains no limitations on the abstract idea that would confer eligibility. For example, claim 1 includes no specific limitations or steps in allowing users to vote. Claim 1 recites a generic "a web-based graphical user interface that enables a user to electronically transmit data indicating a vote or rating" and simply assumes the existence of generic technology and techniques with which its methods can be performed. *See, e.g.,* '665 Patent at 11:67–12:5 ("The audience then has the opportunity in step 536 to vote for and rank the released content. For example, for each television episode the audience may rate it on a scale from 1 to 10. This ranking is preferably conducted through the Internet but may also be done through telephone, print media, such as newspapers, or mail-in ballots.") This wholly generic process is illustrated in Figure 19:



FIG. 19

But mere recitation of well-known voting techniques cannot save claim 1 from ineligibility. *See In re Jobin,* 811 Fed. Appx. at 637; *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 992 (Fed. Cir. 2014) (finding claim directed to "the well-known concept of categorical data storage, *i.e.*, the idea of collecting information in classified form, then separating and transmitting that information according to its classification, is an abstract idea that is not patent-eligible").

Nor does the fact that claim 1 utilizes the Internet does not make it any less abstract. Not only do the Asserted Patents rely on generic networking components to connect to the Internet (*see* §IV, supra) "the use of the Internet is not sufficient to save otherwise abstract claims from ineligibility under § 101." *Ultramercial*, 772 F.3d at 716 (internal citation omitted).

The same is also true of the recited content filtering function. Claim 1 uses purely functional language to implement the concept of content filtering. For example, the "electronic content filter" is "based at least in part on at least the one or more user attributes" where user attributes can be virtually anything, such as "name, address, phone number, ID number, email address, payment preferences, past system usage, private key information" ('665 Patent at 8:17–20), or even "preferences membership acceptance, disclaim acceptance, acceptable price levels, bid amounts, and the like" (*Id.* at 8:21–24). No unique hardware is required to perform this filtering. Nor is it important when or where the content filtering takes place as evidenced by the fact that the independent claims put them in slightly different order. *See* § VI.A.1.a, supra.

As the Federal Circuit has explained, "while not all functional claiming is the same, simply reciting a functional result at the point of novelty poses serious risks under section 101." *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 966 F.3d 1347, 1356 (Fed. Cir. 2020) (Chen, J., concurring) (citations omitted). "Indeed, the essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101." *Elec. Power*, 830 F.3d at 1356. Here, the functional and "vague terms without any meaningful limitations" cannot confer patent eligibility. *TLI Communs. LLC v. AV Auto., L.L.C.*, 823 F.3d 607, 612–13 (Fed. Cir. 2016).

Finally, even if the Asserted Patents were first to patent the abstract idea of crowdsourcing and voting on online content (they were not), it would still be patent ineligible. "[A] claim for a *new* abstract idea is still an abstract idea." *Synopsys*, *Inc.* v. *Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) (emphasis in original). Additionally, adding an abstract idea of "voting" on top of the abstract idea of "crowdsourcing," thus making a "new" abstract idea, does not render the Asserted Patents non-abstract. *RecogniCorp, LLC v. Nintendo Co.*, Ltd., 855 F.3d

1322, 1327 (Fed. Cir. 2017) ("adding one abstract idea … to another abstract idea … does not render the claim non-abstract").

       **(c)**       **Claim 1 is unlike claims that have been held eligible at Step 1**

For all these reasons, claim 1 differs from claims that the Federal Circuit has held to be eligible. In those cases, the claims recited specific means for improving specific computer technology or solving specific computer problems. For instance, the Federal Circuit addressed the eligibility of claims directed to improving computer security in *Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343 (Fed. Cir. 2018). In that case, the Federal Circuit held the claims eligible and stated, "Improving security—here, against a computer's unauthorized use of a program—can be a non-abstract computer-functionality improvement . . . done by a specific technique that departs from earlier approaches to solve a specific computer problem." *Id.* at 1348. The court was persuaded because "[t]he claimed method here specifically identifies how that functionality improvement is effectuated in an assertedly unexpected way." *Id.*

The same cannot be said of claim 1. As noted elsewhere, claim 1 requires no specific or unconventional techniques. *See* § IV, *supra*. Its high-level, generic components do not "improve the functioning of the computer itself," *Alice*, 134 S. Ct. at 2359, for example by disclosing an "improved, particularized method of digital data compression," *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014), or improving "the way a computer stores and retrieves data in memory," *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016). The claims in *Enfish* were distinguished from those that "simply add[ed] conventional computer components to well-known business practices" because "they [we]re directed to a specific improvement to the way computers operate." *Id.* at 1336, 1338. In particular, the unconventional structure of the *Enfish* database resulted in "increased flexibility, faster search times, and smaller memory requirements." *Id.* at 1337.

17

Claim 1 of the '665 Patent discloses no unconventional method that would amount to a "specific improvement to the way computers operate." In fact, claim 1 does not even identify a specific computer problem, much less purport to solve it. That is because its focus is not "on [a] specific asserted improvement in computer capabilities" but instead "on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at 1336. It thus fails at *Alice* Step 1.

### 3.    *Alice* **Step 2: Claim 1 does not contain an inventive concept sufficient to confer patent eligibility**

Because the claims of the Asserted Patents are directed to an abstract idea, the Court must next determine whether it contains an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 134 S. Ct. at 2357 (internal quotations omitted). To pass this test, the claims "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotation omitted). However, "[i]f a claim's only inventive concept is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of the abstract idea." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290–91 (Fed Cir. 2018).

Such is the case here. Claim 1 of the '665 Patent does nothing more than apply the abstract idea of crowdsourcing content using generic components described at the highest level of generality:[4]

- "[E]lectronic media submissions" are stored in "an electronic media submissions database."

- That content is filtered "based on […] user attributes."

---

[4] *See* § VI.A.1.a, *supra*.

- Next, the content is reformatted "in accordance with a selected digital format."

- The content is then "transferred […] over a public network."

- And lastly, "a web-based graphical user interface […] enables a user to [vote or rate the content]." *Id.*

Thus, claim 1's combination of conventional technologies cannot supply a sufficient inventive concept. *See Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (finding claim lacked an inventive concept where it "simply recite[d] the use of generic features . . . as well as routine functions, such as transmitting and receiving signals, to implement the underlying idea").

The specification does not help. Devoid of technical explanation, all it discloses is that everything can be accomplished using generic hardware and software. *See* § IV, *supra; In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 615 (Fed. Cir. 2016) (claims failed *Alice* step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention"). Because the claims of the Asserted Patents are altogether devoid of any "inventive concept," they are patent-ineligible under § 101. *See Alice*, 134 S. Ct. at 2359–60.

Finally, the Federal Circuit has held that ordered combinations of elements do not meet the requirements of *Alice* step two when the combination adds "nothing . . . that is not already present when the steps are considered separately. *Alice*, 573 U.S. 208 at 210. Here, the claims simply follow the conventional order of "retrieving . . . submissions," applying filters to the submissions, "generating a multimedia file . . . from [the] submissions," "transmitting the multimedia file," and "enabl[ing] a user to . . . [vote] or [rate] for [the] submission." '665 Patent at cl. 1. This conventional order, in combination with the generic computer equipment used throughout, does not amount to an inventive concept. *In re Jobin*, 811 F. App'x at 637 (finding the claim as an ordered combination "does not

impose any meaningful limit on the method of collection, organization, grouping, and storage of data."); *EasyWeb Innovations, LLC v. Twitter, Inc.*, 689 F. App'x 969, 971 (Fed. Cir. 2017) (finding no inventive concept where the asserted claim "recites the most basic of steps in data collection, analysis, and publication and they are recited in the ordinary order.").

B.    **There Are No Claim Construction or Factual Disputes Preventing the Court from Ruling at the Rule 12 Stage**

The issue of the patent eligibility of the Asserted Patents is ripe for the Court's consideration. There are no claim construction issues affecting the *Alice* analysis. VCA has not proposed any claim construction that would alter the eligibility analysis. And whether the Asserted Patents recite an unconventional or novel technique for implementing the abstract idea is irrelevant because the claims do nothing more than recite that abstract idea. *BSG Tech LLC*, 899 F.3d at 1290 ("the relevant inquiry is not whether the claimed invention as a whole is unconventional or non-routine . . . After identifying an ineligible concept at step one, we ask at step two '[w]hat else is there in the claims before us?'").

This case is thus unlike *Berkheimer*, where the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). The Federal Circuit then examined whether the improvements described in the specification were included in the claims. For those claims where the inventive feature in the specification was "captured in the claims," the Federal Circuit found a "factual dispute regarding whether the invention describe[d] well-understood, routine, and conventional activities." *Id.* But where the claims did not recite the purportedly inventive features described in the specification, the Federal Circuit concluded that they were directed to patent ineligible subject matter under § 101. *Id.* Here, in contrast, neither the claims nor the specification describes any unconventional components or

the use of generic components in some unconventional manner. Accordingly, this issue is ripe for the Court's consideration, and the Asserted Patents should be found invalid for failing to claim patent-eligible subject matter.

VCA has indicated it intends to amend its Complaint. *See* Dkt. 15. But no amendment can make the claim language say something it does not. VCA cannot plead  facts that inject inventive concepts that do not exist into the claim language. Nor can VCA plausibly allege that the claimed invention requires unconventional components or techniques the Asserted Patents do not disclose. Because the issue of patent eligibility is a legal one centered on the claim language itself, any amendment to VCA's Complaint would be futile.

## VII.    CONCLUSION

For the foregoing reasons, BuzzFeed respectfully requests that the Court dismiss VCA's Complaint for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, Buzzfeed requests dismissal with prejudice.

Dated: September 16, 2024

/s/ Excylyn J. Hardin-Smith
Excylyn J. Hardin-Smith (EHS7780)
hardin-smith@fr.com
7 Times Square, 20th Floor
New York, New York 10036
Telephone: (212) 765-5070
Facsimile: (212) 258-2291

Neil J. McNabnay
Texas Bar No. 24002583
Lance E. Wyatt
Texas Bar No. 24093397
Michael R. Ellis
Texas Bar No. 24102726
Nan Lan
Texas Bar No. 24121711

1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
mcnabnay@fr.com
wyatt@fr.com
ellis@fr.com
lan@fr.com

**COUNSEL FOR DEFENDANT
BUZZFEED, INC.**